UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

CHARLES MILLER,

        Plaintiff,

- against -

NATIONAL ASSOCIATION OF SECURITIES
DEALERS, INC.,

        Defendant.

----------------------------------------------------------X

**MEMORANDUM AND ORDER**
1:05-cv-05495-ENV-ETB

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 21 2006 ★
TIME P.M. / A.M.

**VITALIANO, D.J.**

Plaintiff Charles Miller ("Miller") brings this action against his former employer, the National Association of Securities Dealers, Inc. ("NASD"), alleging that he was terminated from his employment at NASD on March 19, 2004 under circumstances giving rise to an inference of discrimination. Pursuant to Federal Rule of Civil Procedure 12(b)(6), NASD now moves to dismiss those portions of the complaint that assert claims for 1) discrimination under the New York State Human Rights Law ("NYSHRL") and 2) denial of pension benefits under New York's common law. For the reasons stated below, NASD's motion to dismiss the complaint as to these claims is granted.

## I. BACKGROUND

Unless otherwise indicated, the following facts are taken from the complaint and are presumed to be true for the purpose of deciding this motion.

In 1985, Miller was hired by NASD as an examiner trainee. He was promoted to the

position of field supervisor in 1990. Compl. ¶ 2.[1] As a field supervisor, Miller's duties primarily involved examining member firms for compliance with NASD rules concerning their financial and operational condition as well as their sales practices. Compl. ¶ 3; *see also* Lowe Decl. at Ex. B.[2] Through the year 2002 Miller received annual performance evaluations indicating that he exceeded or at least met his employer's expectations. Compl. ¶ 4. However, on September 30, 2003, Miller was issued a written warning from his supervisor concerning alleged deficiencies in his work. In December 2003 he received a further "probation" notice from his supervisor alleging continuing deficiencies. Compl. ¶¶ 6-7. Shortly afterward, in January 2004, Miller received an unfavorable annual performance review for the first time in his 18 years of employment at NASD. Compl. ¶ 8. NASD subsequently terminated Miller's employment by written notice on March 19, 2004. Compl. ¶ 9.

On August 27, 2004, Miller filed a charge of discrimination with the New York State Division of Human Rights ("NYSDHR") alleging that NASD violated NYSHRL, Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Age Discrimination in Employment Act ("ADEA") by discriminating against him on the basis of his "age, race, sex, and creed." Compl. ¶ 20; *see also* Lowe Decl. at Ex. C. After investigating plaintiff's complaint, NYSDHR issued a Determination and Order on December 22, 2004 stating that no probable cause existed to believe that NASD had engaged in, or was continuing to engage in, unlawful discriminatory practices against Miller. Compl. ¶ 21. In the Determination and Order, Miller was also informed of his right to appeal the decision to the Supreme Court in the county wherein the alleged discriminatory

---

[1]"Compl." refers to the complaint of Charles Miller, dated October 26, 2005, which was originally filed in New York State Supreme Court, Nassau County, and was removed to this Court pursuant to 28 U.S.C. § 1446.

[2]"Lowe Decl." refers to the Declaration of Christopher H. Lowe, dated November 30, 2005.

practices took place within 60 days of service of NYSDHR's decision. *See* Lowe Decl. at Ex. D. Instead of pursuing this option, on January 7, 2005 Miller requested that the Equal Employment Opportunity Commission ("EEOC") review NYSDHR's Determination and Order. The EEOC did so, and adopted the findings of NYSDHR in March 2005. Compl. ¶¶ 22-23.

Miller filed the present action against NASD on June 6, 2005 in the Nassau County Supreme Court, alleging that NASD wrongfully terminated Miller's employment based "solely upon prohibited discriminatory factors," thus denying him a "pension to which he would have otherwise received in just over two years of his date of termination." Compl. ¶ 15. The action was removed to this Court on November 23, 2005.

## II. DISCUSSION

A district court may grant a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim only if it appears beyond doubt that the nonmoving party could prove no set of facts that would entitle it to relief or if the claim is not legally feasible. *See, e.g., Official Comm. Of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, L.L.P.*, 322 F.3d 147, 158 (2d Cir. 2003); *Stamelman v. Fleishman-Hillard, Inc.*, 2003 WL 21782645 at *2 (S.D.N.Y. July 31, 2003). Thus, the task of the court in ruling on a Rule 12(b)(6) motion is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence that might be offered in support thereof." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 176 (2d Cir. 2004)(citing *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). When deciding a motion to dismiss, the court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *See, e.g., Hishon v.*

3

*King & Spalding*, 467 U.S. 69, 73 (1984); *Ontario Pub. Serv. Employees Union Pension Trust Fund v. Nortel Networks Corp.*, 369 F.3d 27, 30 (2d Cir. 2004). In addition to the complaint, in deciding a Rule 12(b)(6) motion a court may also consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *Int'l Audiotext Network, Inc. v. AT & T Co.*, 62 F.3d 69, 72 (2d Cir. 1995).

## Procedural Deficiencies: Local Civil Rule 7.1

As an initial matter, the Court notes that Miller failed to comply with Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York by not submitting a memorandum of law in opposition to NASD's partial motion to dismiss. The rule provides:

> Except as otherwise permitted by the court, all motions and all oppositions thereto shall be supported by a memorandum of law, setting forth the points and authorities relied on in support of or in opposition to the motion, and divided, under appropriate headings, into as many parts as there are points to be determined.

Taking heed of this rule, courts have observed in numerous cases that "failure to submit a memorandum of law, standing alone, is sufficient cause for granting or denying a motion. It is not necessary to reach the merits." *E. 95 St. Realty Corp. v. Rinzler*, No. 98-cv-6555, 2000 WL 303279, at *2 (S.D.N.Y. Mar. 22, 2000)(citations omitted); *see also Toner v. United Brotherhood of Carpenters*, No. 96-cv-0023, 1999 WL 178784, at *1 (S.D.N.Y. Mar. 31, 1999); *V.W. Broad v. DKP Corp.*, No. 97-cv-2029, 1998 WL 516113, at *3 n.2 (S.D.N.Y. Aug. 19, 1998). Here,

plaintiff's counsel submitted only an affirmation in opposition to defendant's motion to dismiss, which has expressly been found not to meet the requirements of Local Rule 7.1. *See, e.g., Microsoft Corp. v. K & E Computer Inc.*, No. 00-cv-7550, 2001 WL 332962, at *1 (S.D.N.Y. Apr. 4, 2001)(noting that "[a]n affirmation alone will not satisfy the requirements of Rule 7.1"); *V.W. Broad*, 1998 WL 516113, at *3 n.2. Moreover, the affirmation fails to set forth any statutes or case law whatsoever supporting Miller's opposition to defendant's motion to dismiss, *see* Aff. in Opp'n,[3] thus "effectively placing on the court the burden of conducting the initial legal analysis that is properly the responsibility of [plaintiff's] counsel." *Rotblut v. 300 E. 74th St. Owners Corp.*, No. 96-cv-5762, 1997 WL 16063, at *1 (S.D.N.Y. Jan. 16, 1997). Although this Court could properly grant defendant's partial motion to dismiss on the basis of these failings alone, the merits of the motion are equally compelling. Clearly, both on procedure and substance, NASD's motion must be granted.

## Claims Under the New York State Human Rights Law

Section 297(9) of NYSHRL provides a cause of action to any person aggrieved by an unlawful discriminatory practice "in any court of appropriate jurisdiction for damages . . . and such other remedies as may be appropriate . . . *unless such person had filed a complaint hereunder or with any local commission on human rights* . . . ." N.Y. EXEC. LAW § 297(9) (McKinney 2005)(emphasis added). This provision essentially requires a person alleging discrimination to elect between two different forums in seeking a remedy – either a court of competent jurisdiction or an adjudicatory agency, but not both. Giving effect to the words of the

---

[3]"Aff. in Opp'n" refers to the plaintiff's Affirmation in Opposition to Motion to Dismiss the Complaint in Part, dated February 21, 2006.

statute, "[t]he New York Court of Appeals held in *Emil v. Dewey*, 49 N.Y.2d 968, 406 N.E.2d 744, 428 N.Y.S.2d 887 (1980) (mem.), that . . . when a party files a complaint with the Division of Human Rights regarding alleged discrimination, that party is thereafter barred from 'commencing an action' in court regarding that discrimination . . . ." *Moodie v. Fed. Reserve Bank*, 58 F.3d 879, 882 (2d Cir. 1995); *see also Hourahan v. Ecuadorian Line, Inc.*, No. 95-cv-10698, 1997 WL 2518, at *6 (S.D.N.Y. Jan. 3, 1997)(noting that "under the so-called election of remedies doctrine, an aggrieved individual has the choice of instituting either judicial or administrative proceedings. He may not, however, resort to both forums: having invoked one procedure, he has elected his remedies.")

Here, Miller acknowledges in his present complaint that he filed a prior complaint based on the same facts alleging violations of NYSHRL with NYSDHR, and litigated the prior complaint through to a Determination and Order. Compl. ¶¶ 20-21. In so doing, Miller elected his remedy with regard to any claims arising under NYSHRL and, as a result, this Court lacks subject matter jurisdiction over those claims. *See, e.g., York v. Assoc. of the Bar of the City of New York*, 289 F.3d 122, 125-128 (2d Cir. 2005)(dismissing plaintiff's NYSHRL claims where plaintiff filed a prior state administrative action based on the same facts, the Division of Human Rights issued a determination on the merits, and the plaintiff did not choose to appeal the determination to the Supreme Court); *Ganthier v. North Shore-Long Island Jewish Health Sys., Inc.*, 345 F. Supp. 2d 271, 282-83 (E.D.N.Y. 2004)(dismissing plaintiff's state law discrimination claims because plaintiff filed a prior complaint with NYSDHR, which dismissed the complaint after finding no probable cause that the defendant had discriminated against the plaintiff); *Lyman v. City of New York*, No. 96-cv-2382, 1997 WL 473976, at *4 (S.D.N.Y. Aug. 20, 1997) (dismissing plaintiff's NYSHRL claims for lack of subject matter jurisdiction where plaintiff had

filed an administrative complaint before filing in federal court); *Mahadi v. Johnson Controls, Inc.*, No. 02-cv-1256, 2003 WL 21244545, at *4-5 (E.D.N.Y. Apr. 25, 2003)(also dismissing plaintiff's NYSHRL claims under the election of remedies doctrine where plaintiff had filed an administrative complaint with NYSDHR, which then proceeded to adjudicate the complaint on the merits). Thus, to the extent Miller raises claims under NYSHRL in this action, such claims must be dismissed by this Court for lack of subject matter jurisdiction.

### Claims Under New York's Common Law

Finally, to the extent that plaintiff intends to assert a claim for wrongful termination under New York law arising from his allegation that he was fired by NASD "for the purpose of denying him . . . a pension to which he would have otherwise received in just over two years of his date of termination," *see* Compl. ¶ 15, any such state law claim is expressly preempted by the Employee Income Retirement Security Act of 1974 ("ERISA").

Congress enacted ERISA so that employers could rely on a single, uniform system of regulation for employee benefit plans and avoid "the crazy quilt of varying and even conflicting state laws to which employers would otherwise be subjected in administering their plans." *Yoran v. The Bronx-Lebanon Hosp. Ctr.*, 96-cv-2179, 1999 WL 378350, at *4 (S.D.N.Y. June 10, 1999) (citing *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 52, 58 (1990)). To facilitate achievement of this goal, the ERISA statute includes an express preemption clause that, in relevant part, mandates that "the provisions of [ERISA] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." ERISA § 514(a), 29 U.S.C. § 1144(a). As pointed out by the Supreme Court, this particular

7

preemption clause is especially "conspicuous for its breadth. It establishes as an area of exclusive federal concern the subject of every state law that 'relates to' an employee benefit plan governed by ERISA." *FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990); *see also Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990)(citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 98 (1983))(noting that "[t]he key to § 514(a) is found in the words 'relate to' . . . Congress used those words in their broad sense, rejecting more limited pre-emption language that would have made the clause 'applicable only to state laws relating to the specific subjects covered by ERISA.'"). Indeed, after considering the congressional intent manifested in ERISA's expansive preemption clause, courts have found that a wide variety of state law claims are preempted by ERISA. *See, e.g., Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 829-30 (1988); *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 62 (1987); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47-48 (1987); *Smith v. Dunham-Bush, Inc.*, 959 F.2d 6, 10 (2d Cir. 1992).

In the case at bar, there is no doubt that Miller's claim that he was terminated by NASD at least in part due to NASD's alleged desire to wrongfully deprive him of his pension benefits "relates to" a pension plan within the meaning of ERISA. In *Ingersoll-Rand*, plaintiff sued his former employer in Texas state court alleging that a principal reason for his termination was the company's desire to cease contributing to his pension fund, which he asserted would have vested four months after he was fired. *Ingersoll-Rand*, 498 U.S. at 135-36. The Supreme Court held that plaintiff's state claim was expressly preempted by § 514(a) of ERISA since a court considering a state law claim that an employee was wrongfully terminated "because of the employer's [alleged] desire to avoid contributing to, or paying benefits under, the employee's pension fund," would have to find, among other things, that an ERISA plan actually existed in the first place. *Id.* at 140.

8

Accordingly, such an action "related to" ERISA rights within the expansive meaning of § 514(a), and was, therefore, preempted. *Id.* at 139-142. The facts here are very similar: plaintiff is claiming that he was wrongfully discharged in order to prevent him from attaining pension benefits to which he would have become entitled within approximately two years of his date of termination. *See* Compl ¶ 15. Thus, to the extent plaintiff is attempting to make out a state common law claim for wrongful discharge based on the defendant's alleged intent to deprive him of his pension benefits, such a claim is preempted by ERISA and must be dismissed under *Ingersoll-Rand*.[4]

## III. CONCLUSION

For the foregoing reasons, plaintiff Charles Miller's claims 1) that he was discriminated against in employment in violation of the New York State Human Rights Law and 2) that under New York law he was wrongfully terminated for the purpose of denying him pension benefits are dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Miller's claims under Title VII and the Age Discrimination in Employment Act are not challenged on this motion and their status is unaffected by this Memorandum and Order.

Lastly, pursuant to the March 10, 2006 order of Magistrate Judge Boyle, all discovery in this matter was to be concluded by September 11, 2006. If discovery has been completed, the parties shall appear before Magistrate Judge Boyle, as that same order directs, on October 3, 2006 at 11:00 a.m., for the final pretrial conference. If discovery has not been completed, counsel shall

---

[4] *Cf. Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 288 (2d Cir. 1992)(holding that "[a] state common law action which merely amounts to an alternative theory of recovery for conduct actionable under ERISA is preempted"); *Yoran*, 1999 WL 378350 at *4, *7 (noting that a plaintiff's allegation that his employer terminated him as a ruse to avoid paying him retirement benefits, if construed as an attempt to make out a wrongful discharge claim under New York law, would be preempted by ERISA under *Ingersoll-Rand*).

9

forthwith advise Magistrate Judge Boyle that discovery is incomplete and schedule before him an immediate conference to resolve any and all outstanding discovery issues.

        SO ORDERED.

Dated:     Brooklyn, New York
             September 19, 2006

                              ERIC N. VITALIANO
                              United States District Judge